Sharpe *v.* Allen.

NANCY SHARPE *v.* GREENE ALLEN *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Dismissal of suit out of term.* By statute a suit in chancery may be dismissed in writing out of term as well as in term, and the dismissal, when established by proof, with or without contest, will relate back to, and be operative from the day of its execution.

2. SAME. *Attorney's lien.* Neither the attorney of the party who dismisses a suit, nor third persons although parties to the suit, are entitled to resist the dismissal, but if the attorney or third person has previously acquired, either by decree or lien, an interest in the subject-matter of litigation which the law recognizes, that interest will not be affected by the dismissal, and may be asserted by proper proceedings.

3. SAME. *Same.* By a bill filed to recover a distributive share of the estate of a decedent against devisees upon the ground that the decedent died intestate as to the part of the estate sued for, without attachment or other impounding process, the property sued for is not placed in *custodia legis,* and the counsel of the claimant acquires no lien until declared on the recovery.

4. SAME. *Appeal does not lie. When.* An appeal does not lie from an order overruling a plea as insufficient.

FROM COCKE.

Appeal from the Chancery Court at Newport. H. C. SMITH, Ch.

H. H. INGERSOLL and J. P. EVANS for petitioners.

WM. MCFARLAND, W. S. DICKSON and G. W. PICKLE for defendants.

COOPER, J., delivered the opinion of the court.

About the month of January, 1876, G. W. Allen

died in Cocke county without wife or child, leaving as his heirs and distributees at law one brother, four sisters, and the children of one deceased brother and of two deceased sisters. G. W. Allen left a last will which was duly proved and recorded after his death, and of which his surviving brother was appointed and qualified as executor. The only devises and bequests of the will were made to this brother and two of the sisters. Nancy Sharpe, the original complainant in this case, was one of the sisters of the testator not provided for by the will. She filed her bill against the executor and devisees claiming that the will only disposed of a part of the testattor's erty, and seeking to hold them liable for the residue of the property which they had taken possession of under the will. The other heirs and distributees were made defendants to the bill, the children of the deceased brother and sisters by describing them as the children of the brother or sister named, whose names and residences were unknown. The devisees of the will demurred to the bill upon the ground, in substance, that the will devised to them all the property of which the testator died siezed and possessed. The chancellor overruled the demurrer, and this court, upon appeal, affirmed his decree, and remanded the cause for further proceedings. The decision was put upon the ground that the will of G. W. Allen only disposed of the property which the testator owned at the date of its execution, and that the deceased died intestate as to after acquired property. The opinion of this court is reported in *Sharpe* v. *Allen,* 5 Lea, 81.

Shortly after the remand, and on January 28, 1881, the complainant, Nancy Sharpe, entered into a compromise agreement with the devisees under the will of G. W. Allen, of all the matters of litigation between them growing out of the provisions of the will and relating to the testator's estate. And, in accordance with the terms of compromise, she gave to the devisees a written instrument of that date stating the facts, and reciting that, in consideration of the compromise, she dismissed her pending suit, and released the devisees from all right of action against them in reference to the will or the estate of G. W. Allen. On February 28, 1881, which was the first day of the next term of the chancery court in which her suit was pending, the devisees presented this writing to the court and moved to dismiss the suit. On the same day, the children of Margaret Nichols, deceased, who was a sister of G. W. Allen, entered their appearance in the suit, and filed an answer and cross-bill, in which they admitted the facts alleged in the original bill, and asked for the same relief. On the next day, the devisees introduced proof of the execution by the complainant of the instrument of dismissal and release. On the second day, O. C. King, the counsel of the complainant, in the filing and prosecution of her bill, filed his petition in the cause, claiming a lien on the property in litigation for his professional services, and resisting the dismissal of the bill upon this ground. On the next day, March 3, 1881, the cause was heard upon the motion of the devisees to dismiss the bill by virtue of the compromise and written order

of the complainant, which motion was opposed by O.
C. King and the children of Margaret Nichols.   The
cause was also heard at the same time upon the mo-
tion of the devisees to dismiss the petition of O. C.
King because it did not show that he had the lien
claimed.   The chancellor overruled both motions.   The
devisees then entered their appearance to the petition
and cross-bill, and were allowed time to make defense.
They afterwards demurred to the petition and cross-
bill, and their demurrers were overruled.     They then
filed a plea to the cross-bill, which was set for hearing
on its sufficiency, and held by the chancellor to be
insufficient.   The action of the chancellor upon the
demurrers and the plea is embodied in one entry,
which recites the filing of the plea after the demurrer
to the cross-bill had been overruled.   "From which
decree," says the entry, the devisees pray an appeal,
which is granted upon their giving bond with security,
and the same was accordingly executed.   The bond
in the record recites the filing of the demurrers and
the plea in bar, and the action of the court thereon,
and appeal as above.   The Referees have reported in
favor of the affirmance of the chancellor's decree.

It was held at an early day, in this State, that
the consent of the court was necessary to the dismissal
of a suit in equity, and therefore no dismissal could
be had in vacation: *Stewart* v. *Hall,* 2 Tenn., 179.
Afterwards, by the act of 1826, ch. 28, brought for-
ward into the Code, sec. 3199, suits were authorized
to be dismissed in writing out of term time as well
as in term.   By virtue of this statute, a dismissal of

a suit in vacation puts an end to the suit, and termi-
nates the control of the court over it as fully as if
made in term time.    The jurisdiction of the court
over the cause ceases except to render judgment for
costs, or to make such orders as may be necessary to
give effect to the dismissal: *Thompson* v. *Thompson,* 3
Head, 527.    The validity of the order may, of course,
be contested and determined: *Stanton* v. *Houston,* 12
Heis., 265.    But if genuine and fair, neither the at-
torney of the party nor third person, although parties
to the suit, can resist a dismissal: *Yoakley* v. *Haw-
ley,* 5 Lea, 670; *Stephens* v. *Railroad,* 10 Lea, 448;
*Johnson* v. *Story,* 1 Lea, 114; *Clement* v. *State,* 1
Leg. Rep., 261.    If the attorney or third person has
previously acquired an interest in the subject-matter
of the litigation, that interest cannot be affected by
the dismissal, and may be asserted by proper judicial
proceedings.    This is the principle upon which the
decision of *Pleasants* v. *Kortrecht,* 5 Heis., 694, is
rested, although it is very doubtful whether the prin-
ciple was properly applied to the facts of that case.

The compromise and consequent dismissal in writing
by the complainant of her suit in the case before us
were made on January 28, 1881, and took effect from
that date.    It was of no consequence to the rights
of the parties to this contest whether the proof of its
execution was made on the first or second day of the
ensuing term of court, or before or after the filing
of the lawyer's petition and the cross-bill of the de-
fendants.    When established by proof, with or without
contest, the dismissal in writing would relate back to,

and be operative from the day of its execution. It was the duty of the court, as soon as the proof was made, to make the necessary orders to carry the dismissal into effect so far as the complainant was concerned. If other persons had rights in the subject-matter of litigation or in the suit, which the law would recognize, they might be enforced, and would not be affected by the dismissal.

The children of Margaret Nichols do claim that by virtue of the decision of this court construing the will of G. W. Allen, they have acquired an interest in the property in controversy as to which the deceased died intestate, and that they are entitled to prosecute the suit for their benefit. The facts do raise the question whether the decree of this court overruling the demurrer to the bill, under the circumstances, the appeal having been taken for the purpose of having the will construed and the remand having been made with direction to the court below to proceed in accordance with the opinion of this court, is not such a decree or decretal order as will entitle any of the defendant distributees to enforce it. Another question in favor of these parties is also raised, and that is whether the court would not treat the cross bill as an original bill for the enforcement of their independent rights. The authorities on this subject are cited in the last edition of Dan. Ch. Pr. But the case is not properly before us for the determination of these questions. The devisees did not appeal from the decree overruling their demurrer to the cross-bill, as they might have done by statute with the permission

of the chancellor. They filed a plea to the cross-bill, and have appealed from the decree holding that plea insufficient. Such a decree is, of course, not a final decree from which an appeal lies for the defendants had the right to answer the allegations of the bill in a given time: Code, sec. 4395. Nor is it such a decree as can be appealed from by consent of the chancellor: Code, sec. 3157. The appeal from this part of the chancellor's decree must be dismissed as improvidently granted, at the cost of the appellants.

The appeal from the decree overruling the demurrer of the appellants to the petition of King, the attorney, is within the statute. The petition, conceding upon its face that Nancy Sharpe had entered into the compromise, and executed the written dismissal in question, and stating the facts, rests its equity upon the assertions that by the bill and the proceedings themselves, the estate of G. W. Allen was in *custodia legis,* and that petitioner had acquired a lien on the share of his client in the estate for the payment of his fees. The demurrer of the devisees squarely calls in question the correctness of these assumptions. The bill does not seek to attach any property, nor docs it impound the property by injunction, or other process. Nothing has been brought actually in *custodia legis.* And the lien of an attorney for professional services in such a case has no existence until declared upon the final recovery. The counsel has fairly earned, and is justly entitled to compensation for services from his client. But he has acquired no lien on any property which can be enforced against the appellants.

The chancellor's decree must be reversed in this branch of the case, the demurrer to the petition sustained, and the petition dismissed as to the appellants, with costs.